[Cite as *Kline v. Kline*, 2012-Ohio-479.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96734**

## BARBARA L. KLINE

PLAINTIFF-APPELLEE

vs.

## PAUL J. KLINE

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Domestic Relations Division
Case No. D-242949

**BEFORE:** S. Gallagher, J., Celebrezze, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** February 9, 2012

**ATTORNEYS FOR APPELLANT**

Loretta A. Coyne
Richard J. Stahl
18051 Jefferson Park Road
Suite 102
Middleburg Heights, OH  44130


**ATTORNEY FOR APPELLEE**

James P. Reddy Jr.
800 Standard Bldg.
1370 Ontario Street
Cleveland, OH  44113


SEAN C. GALLAGHER, J.:

{¶ 1}  Appellant Paul Kline ("Paul") appeals the decision of the Cuyahoga County  Common Pleas Court, Domestic Relations Division, in Case No. D-242949, which denied his motion to terminate spousal support. For the following reasons, we affirm.

{¶ 2}  Paul and Barbara Kline ("Barbara") were divorced in 1996 after approximately 30 years of marriage.  Both worked for Southwest General Hospital.  At the time of the divorce, Paul earned over $100,000 a year and Barbara earned about $27,212.40 per year.  Accordingly, Paul paid

spousal support in the amount of $2,500 per month until Barbara's death, remarriage, or cohabitation with an unrelated male, or until further order of the domestic relations court. Paul and Barbara split their pensions as part of the divorce decree, each keeping his or her own free and clear of the other. On December 2, 2009, Paul filed a motion to terminate the spousal support, claiming that his medical conditions and recent retirement caused a substantial change to his yearly income. Upon retirement, Paul earned $24,456 from Social Security and $53,109.72 from his pension. At the time Paul's motion was filed, Barbara earned $17,524 from unemployment compensation and $10,308 from her pension. The trial court denied Paul's motion to terminate spousal support, and Paul timely appealed, raising two assignments of error, which provide as follows:

1. Whether the trial court abused its discretion in drawing twice from the same well (i.e., "double dipping") — defendant's share of his previously divided pension — when reviewing a potential modification of spousal support.

2. Whether the trial court abused its discretion by refusing to terminate the spousal support obligation despite a substantial change in circumstances.

Both assignments of error address whether the trial court erred in denying Paul's motion to terminate spousal support, and therefore, we will address both together.

{¶ 3} We review a trial court's determination in domestic relations cases under an abuse of discretion standard. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028

(1989). The trial court must have discretion to equitably separate the married parties based on the facts of circumstances of each case. *Id.* Thus, "the term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

> [A] trial court lacks jurisdiction to modify a prior order of spousal support unless the decree of the court expressly reserved jurisdiction to make the modification and unless the court finds (1) that a substantial change in circumstances has occurred and (2) that the change was not contemplated at the time of the original decree. *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, ¶ 33.

It is uncontested that the trial court reserved jurisdiction to modify the spousal support award. Further, Barbara does not address whether a substantial change in circumstances occurred. Rather, Barbara focuses on Paul's income and ability to pay spousal support.

{¶ 4} In order to determine whether to grant or modify spousal support, including the amount and duration, the trial court must consider the factors listed in R.C. 3105.18(C). *Carreker v. Carreker*, 8th Dist. No. 93313, 2010-Ohio-3411, 2010 WL 2854436, ¶ 22.

> The goal of spousal support is to reach an equitable result. And while there is no set mathematical formula to reach this goal, the Ohio Supreme Court requires the trial court to consider all 14 factors of R.C. 3105.18(C)[, when originally granting spousal support,] and not base its determination upon any one of those factors taken in isolation. (Internal citations and quotations omitted.) *Dunagan v. Dunagan*, 8th Dist. No. 93678, 2010-Ohio-5232, 2010 WL 4292209, ¶ 15, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988), paragraph one of the syllabus.

When considering a motion to modify [or terminate] a spousal support order, the trial court need not reexamine all the factors listed in R.C. 3105.18(C)(1). The court need only consider the factors which have actually changed since the last order. (Internal citations omitted.) *Dean v. Dean*, 8th Dist. No. 95615, 2011-Ohio-2401, 2011 WL 1935832, ¶ 14.

**{¶ 5}** Paul argues that pursuant to R.C. 3105.18(C)(1)(a)-(d), the negative changes in his health caused him to retire from Southwest General Hospital, thus reducing his yearly income to such a degree that he can no longer afford the $2,500 per month spousal support award. We note that Paul does not argue that his deteriorating health has any financial ramifications beyond being the cause of his retirement and inability to work. Although Paul's health is a factor pursuant to R.C. 3105.18(C)(1)(c), he acknowledges that the crux of his arguments centers on his reduction in income. More specifically, he argues his pension income should not be used to measure his yearly income, pursuant to R.C. 3105.18(C)(1)(a), since the parties originally divided their pensions during the divorce "free and clear" from all claims from the other. Paul argues this impermissibly allows Barbara to "double dip" because the pension values were already considered during the divorce and those values should not then be included in Paul's income in consideration of spousal support.

**{¶ 6}** In determining whether to terminate spousal support, the trial court need only consider the "[t]he income of the parties, from all sources, including, but not limited to income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code" as one of several factors. R.C. 3105.18(C)(1)(a).

Therefore, the statute requires the trial court to consider Paul's income from all sources. The only issue before us then is whether the trial court abused its discretion in considering Paul's pension income for the purposes of determining whether to terminate his spousal support obligation.

{¶ 7} Paul relies on *Heller v. Heller*, 10th Dist. No. 07AP-871, 2008-Ohio-3296, 2008 WL 2588064, and this court's decision in *Dean*, 8th Dist. No. 95615, 2011-Ohio-2401, 2011 WL 1935832, for the proposition that it is inequitable to count marital assets twice, once in the property division and again in the spousal support award — the so-called prohibition against double dipping. *Heller* at ¶ 19.

{¶ 8} In *Dean*, the husband received assets from the divorce, but did not have a pension. *Dean* at ¶ 30. The trial court found that the only way for the husband to maintain his spousal support obligations would be to "spend down" or sell his assets acquired from the divorce, which were equally divided. *Id.* This court held that it would be inequitable to force husband to spend down assets he acquired in the equitable distribution of marital property of his divorce, thereby maintaining the wife's standard of living at the expense of the husband's.

{¶ 9} In *Heller*, the issue was the trial court's use of the husband's excess business earnings to calculate both the value of his business for the purposes of the property distribution and his income for purposes of spousal support. The *Heller* court held that since the wife already received the value of the excess earnings through the

property distribution, she was not entitled to receive any portion of the excess earnings for the purposes of satisfying the spousal support obligation. *Heller* at ¶ 22 (noting specifically that the spousal support obligation awarded required the husband to use 20 percent of the excess earnings for spousal support). Both cases are inapplicable to the current case. In both *Heller* and *Dean*, the courts were equitably addressing situations where the spousal support obligation was actually satisfied by the previously divided marital assets, not situations such as the current one that involves mere consideration of the income to understand the totality of the party's circumstances.

{¶ 10} In fact, the current case is distinguishable based on the language employed in originally dividing the marital estate and stating the duration of spousal support. The November 18, 1996 judgment entry of divorce ordered each party to "retain" their respective pensions from Southwest General Health Center "free and clear of any claim of the other." The divorce decree further set forth the reasons for which Paul could seek termination of the spousal support award. This language is dispositive.

{¶ 11} Barbara is not entitled, pursuant to the express language of the judgment entry of divorce, to collect from Paul's pension either directly or indirectly, further rendering any reliance on *Heller* and *Dean* unnecessary since the divorce decree expressly provides what those cases equitably achieved. Paul is correct that his pension income cannot be included for the purposes of satisfying the spousal support obligation. However, being required to satisfy spousal support through a previously divided marital

asset is not synonymous with considering the income derived from the asset in determining the appropriate spousal support award. Courts must consider "income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [(the division of marital assets section)] * * * of the Revised Code." R.C. 3105.18(C)(1)(a). While Paul's pension cannot fund the spousal support obligation, the court must still consider the income for the purposes of determining the appropriate amount of spousal support that can be satisfied through other sources of income or assets.

{¶ 12} The only other income considered by the trial court was Paul's Social Security income totaling $2,038 per month, and while retirement savings were not specifically addressed in the trial court's decision, both parties testified to having significant retirement savings, Paul's nest egg being almost twice the size of Barbara's. In light of the fact that Paul has other income, from Social Security, that could be used to satisfy his spousal support obligation, there was competent, credible evidence with which the trial court could deny Paul's motion to terminate spousal support. Paul only sought termination of his spousal support obligation, not modification. We therefore must look to the duration of the spousal support award as set forth in the original judgment entry of divorce.

{¶ 13} The original divorce decree allowed Paul to seek termination of spousal support only upon Barbara's death, cohabitation with an adult male, or marriage, or upon

further order of the court. This court has held, in consideration of identical language in a divorce decree, that a reduction of income alone is insufficient to warrant the "termination" of spousal support. *Abernethy v. Abernethy*, 8th Dist. No. 92708, 2010-Ohio-435, 2010 WL 457133, ¶ 25. Paul had the means to pay some spousal support and limited his motion to terminating his obligation altogether. Termination of Paul's spousal support obligation was unwarranted based on his reduced income alone.

{¶ 14} The trial court, accordingly, did not abuse its discretion in denying Paul's motion. The decision of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MARY EILEEN KILBANE, J., CONCURS;
FRANK D. CELEBREZZE, JR., P.J., CONCURS IN JUDGMENT ONLY