[Cite as *Organ v. Organ*, 2014-Ohio-3474.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | | |
|---|---|---|
| RICHARD C. ORGAN | | C.A. No.     26904 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| PATRICIA ORGAN | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | | CASE No.     2010-01-0191 |

DECISION AND JOURNAL ENTRY

Dated: August 13, 2014

---

HENSAL, Judge.

{¶1}    Richard Organ appeals a divorce decree entered by the Summit County Court of Common Pleas, Domestic Relations Division.  For the following reasons, this Court affirms.

I.

{¶2}    Richard and Patricia Organ married in December 1983.  At the time, Wife was 22 years old and about to begin her last semester at Northeastern University, where she obtained a bachelor of science.  Husband was 26 years old and about to begin his last semester at Harvard Business School, where he earned a master of business administration.  After they finished their degrees, they moved to Hudson, Ohio and worked full time until March 1985, when Wife gave birth to a son.  Because the baby was colicky, Wife quit her job to take care of the child.  She went back to work part-time in 1986, and remained employed until a few months after giving birth to a daughter.  Over the next few years, Husband continued working full-time and Wife resumed working part-time.

{¶3} In 1994, a large company that is headquartered in Kentucky hired Husband to be its chief financial officer. After the family moved out-of-state, Wife stayed home for a couple years to help the children adjust to their new community and assist Husband with his company social obligations. Wife eventually went back to work part-time, but quit in 1998 when Husband was hired to be the executive vice president of an Ohio company. The family subsequently moved back to Hudson.

{¶4} After returning to Ohio, Wife worked part-time for a couple of years, then quit her job to oversee the renovation of a century-home that the parties had purchased. Husband, meanwhile, became president of his company. In 2007, Husband received a multi-million dollar bonus after the company he worked for was sold. In 2009, Husband and Wife separated. Husband filed for divorce the following year. He continued to serve as president of his company, and received another multi-million dollar bonus in 2011 when the company was sold again. In April 2012, he left the Ohio company and went to work as the chief executive officer for a company in California.

{¶5} The parties divided most of their assets evenly, receiving over five million dollars each. The case proceeded to trial, however, on whether the jewelry that Husband had bought for Wife was marital property, whether the stock Husband had acquired in the California company he went to work for and his frequent flier miles were marital property, and whether Wife was entitled to spousal support. Following several days of testimony, the trial court found that the jewelry was Wife's separate property. It found that Husband's stock in the new company was his separate property, but that any income generated from it could be considered for spousal support purposes. Finally, it determined that, for spousal support, Husband must pay Wife $13,525 per month indefinitely plus 50% of any employment bonuses he receives and 33% of

any income or gain he realizes on the stock he acquired in the California company. Husband has appealed the spousal support award, assigning five errors.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRONEOUSLY AND ARBITRARILY FAILED TO CONSIDER WIFE'S INVESTMENT INCOME FOR SPOUSAL SUPPORT PURPOSES WHILE INCLUDING HUSBAND'S INVESTMENT INCOME FOR SPOUSAL SUPPORT PURPOSES.

{¶1} Husband argues that the trial court incorrectly calculated its spousal support award. Under Revised Code Section 3105.18(B), "[i]n divorce and legal separation proceedings, * * * the court of common pleas may award reasonable spousal support to either party." "In determining whether spousal support is appropriate and reasonable," the court shall consider the factors listed in Section 3105.18(C)(1)(a-n). R.C. 3105.18(C)(1). "This Court reviews a spousal support award under an abuse of discretion standard." *Hirt v. Hirt*, 9th Dist. Medina No. 03CA0110-M, 2004-Ohio-4318, ¶ 8. "An abuse of discretion implies that the court's decision is arbitrary, unreasonable, or unconscionable." *Smith v. Smith*, 9th Dist. Summit No. 26013, 2012-Ohio-1716, ¶ 8, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶6} Husband notes that the trial court used a "FIN Plan Analysis" to calculate an equal distribution of the parties' monthly income. He argues that the court failed to include their investment income, however, in its calculation. He notes that the parties divided substantial assets and that he presented expert testimony that Wife will be able to earn $337,000 a year by investing her share of the assets. According to Husband, the court's failure to include Wife's investment income in its calculation significantly skewed its result[1]

---

[1] Husband does not actually explain how the failure to include the investment income in the FinPlan calculation skewed the award of spousal support.

{¶7}    Husband suggests that the reason the court did not include Wife's investment income in its calculation is because they divided the marital assets evenly, so any income she could generate on her half of the assets would be cancelled out in the calculation by the income he could generate on his half of the assets.  Husband argues, however, that the mere fact that he can also generate investment income on his half of the assets was not a good reason to exclude Wife's investment income from the court's calculation.  He notes that he took an advance on his half of the assets to purchase $500,000 worth of stock from the California company where he works.  Instead of leaving that investment unaffected in its decree, the court determined that he must pay Wife 33% of any income he generates from it.  The court, therefore, included some of his future investment income in its spousal support calculation but did not include any of Wife's investment income.  Husband argues that the court's unequal treatment of the parties' investment income was arbitrary, unreasonable, and inequitable.

{¶8}    Wife contends that Husband's livelihood is increasing the value of companies so that they can be sold for profit.  She notes that a large part of their income over the last decade has come from the incentives he received when the company he was running was sold.  She, therefore, argues that it was appropriate for the court to treat Husband's future active income from the stock he has purchased in the California company different than the income she may be able to generate through passive investments.  She also argues that the fact that Husband will receive 66% of any income or gain that is derived from his investment in the California company offsets the fact that he cannot invest the $500,000 in other ways.  She further argues that the fact that the court has retained jurisdiction over the spousal support award mitigates any injustice that might arise if there is a change in Husband's circumstances.

{¶9} In its decree, the trial court noted that one of the factors it had to consider in determining whether to order spousal support was "income derived from property divided" by the parties. R.C. 3105.18(C)(1)(a). It also specifically rejected Husband's argument that Wife can live off her investment income. The court further determined that, based on the length of the marriage and Wife's role in helping Husband advance his career to its current state, Wife should be able to maintain the same standard of living as Husband. It, therefore, attempted to equalize their monthly income. The difficulty in the court's calculation was that, because of Husband's investment in his new company, which Wife is unable to duplicate, the parties do not have the same amount of assets to invest in other ways. The other difficulty was that the parties' income, as determined by their most recent tax returns, could fluctuate drastically, at times by several million dollars. Thus, if the trial court attempted to fashion appropriate and reasonable spousal support employing historical earnings, it might result in a significant cash outlay by Husband that would be inconsistent with the way that he actually earned income in the later years of the marriage. It would also be more speculative. Upon review of the record, we conclude that the trial court did not abuse its discretion when it balanced those considerations by awarding spousal support to Wife based upon the income earned from Husband's investment in his new company, but allow him to retain a larger percentage of the proceeds. We also conclude that, because the court equalized the parties' potential return from their investment of marital assets, it did not abuse its discretion when it omitted both sums from its spousal support calculation. Husband's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN ORDERING HUSBAND TO PAY SPOUSAL SUPPORT BASED ON 50% OF HIS EARNED INCOME AND 33% OF HIS INVESTMENT INCOME.

{¶10} In his second assignment of error, Husband argues that it was improper for the trial court to use a mathematical formula to calculate the spousal support award and order him to pay Wife a certain percentage of his income. He argues that the award is impermissible because it is not tailored to the parties' specific circumstances, as required under Section 3105.18(C)(1).

{¶11} Husband notes that in *Kaechele v. Kaechele*, 35 Ohio St.3d 93 (1988), the Ohio Supreme Court wrote that, "in ascertaining the need for and amount of sustenance alimony * * * [t]he method by which the goal is achieved cannot be reduced to a mathematical formula." (Citations omitted) *Id*. at 96; *see also Kunkle v. Kunkle*, 51 Ohio St.3d 64, 70 (1990) (following *Kaechele*). He notes that, in *Burner v. Burner*, 9th Dist. Summit No. 19903, 2000 WL 1533898 (Oct. 18, 2000), this Court concluded that, where Wife's monthly spousal support award constituted almost exactly one half of Husband's base pay and yearly bonuses, the award was improperly based on a mathematical formula, in violation of *Kunkle*. *Id*. at *5. He argues that, as in *Burner*, the trial court's 50% spousal support award is improperly based on a mathematical formula and is not reasonable and appropriate under Section 3105.18. *Id*.

{¶12} Although Husband has properly interpreted *Burner*, we do not believe it controls in this case. In *Burner*, this Court did not analyze the effect that the amendments to Section 3105.18 that followed *Kaechele* and *Kunkle* had on the application of that section. At the time that *Kaechele* and *Kunkle* were decided, Section 3105.18 allowed courts to award "sustenance alimony" that was "based on need." *Kunkle* at 70, quoting *Kaechele* at 95. In *Kaechele*, the Supreme Court reasoned that, since a trial court must consider all of the factors listed in the statute, which are different in every case, the method of determining a spouse's need for support cannot be reduced to a mathematical formula. *Kaechele* at 96. In *Kunkle*, the Supreme Court determined that a decree ordering Husband to pay one-third of his gross monthly income was

unreasonable because the amount of support that Wife would receive substantially exceeded the amount she actually needed each month. *Kunkle* at 71.

{¶13} A few months after the *Kunkle* decision, the General Assembly amended Section 3105.18, eliminating the need requirement. *Haynes v. Haynes*, 9th Dist. Summit No. 18487, 1998 WL 114424, *3 (Mar. 4, 1998). Under the current version of Section 3105.18(C)(1), an award of spousal support must only be "appropriate and reasonable" after consideration of the factors listed in that section. *Id.*, quoting R.C. 3105.18(C)(1). The statute also provides that, "[i]n determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income." R.C. 3105.18(C)(2). Since the amendment to Section 3105.18, "this court has repeatedly held that [the standard for awarding spousal support is] significantly different and that spousal support is no longer based strictly on a consideration of need." *Haynes* at *3.

{¶14} In *Burner*, this Court concluded that the spousal support award had to comply with *Kunkle*. *Burner*, 2000 WL 1533898 at *5. *Kunkle*, however, had applied a different version of Section 3105.18, which focused on need instead of reasonableness as its primary concern. *Id*. ("[I]t is clear that the trial court awarded spousal support based on fifty percent of Husband's base pay and past * * * bonuses, contrary to *Kunkle*."). In this case, however, it would be in error to entertain any assumption that, just because the spousal support award came out to approximately half of Husband's income, it meant that the award was improperly based on a "mathematical formula" instead of the factors enumerated in Section 3105.18(C). A spousal support award is always going to be some percentage of the paying spouse's income, but that does not mean that the amount is based on mathematical formula. The point of the Supreme

Court's "mathematical formula" statement in *Kaechele* was simply to emphasize that a trial court "must consider all [of] the factors listed in R.C. 3105.18(B) and not base its determination upon any one of those factors taken in isolation." *Kaechele*, 35 Ohio St.3d 93, at paragraph one of the syllabus.

{¶15} In this case, the trial court started with the presumption that both parties were equally responsible for the production of the marital income. R.C. 3105.18(C)(2). It considered all of the factors under Section 3105.18(C), giving particular weight to the length of the marriage, the fact that the parties had worked as a team to allow Husband to build his career to its present state, the fact that the parties made a joint decision to have Wife stay home with the children and assume all of the responsibilities of meeting their daily needs as well as operating the household, the age of the parties, Wife's mental and emotional health, Wife's employment history and prospects, and the parties' standard of living. R.C. 3105.18(C)(1)(a-n). It found, based on those factors, that it was reasonable and equitable for Wife to be able to continue to enjoy a standard of living equal to Husband's and determined that, in order to make that possible, she would need approximately half his income. Upon review of the record, we conclude that, even though the court used the FIN Plan analysis as a tool to calculate an even division of Husband's earnings, its underlying spousal support decision was based on the factors outlined in Section 3105.18(C), not a mathematical formula. Husband's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING HUSBAND TO PAY SPOUSAL SUPPORT FROM HIS SEPARATE PROPERTY INCOME.

{¶16} In his third assignment of error, Husband argues that it was impermissible for the trial court to order him to satisfy his spousal support obligation from the stock he has acquired in

the California company, which the court found is his separate property. According to Husband, although the court could consider his separate property for purposes of determining the amount of support, his separate property cannot fund his spousal support obligation.

{¶17} In support of his argument, Husband cites *Kline v. Kline*, 8th Dist. Cuyahoga No. 96734, 2012-Ohio-479. In *Kline*, Paul and Barbara Kline divorced after 30 years of marriage. Under the terms of their decree, Husband had to pay Wife $2,500 per month in spousal support. After Husband retired, he moved to terminate the spousal support award because his income had diminished. He argued that the income he receives from his pension should not be considered as part of his income because, under the decree, the parties had split his pension evenly. The Eighth District Court of Appeals agreed in part, noting that the decree had ordered the parties to retain their respective pensions "free and clear of any claim of the other." *Id.* at ¶ 10. It determined that, pursuant to that express language in the decree, Wife could not collect from Husband's pension either directly or indirectly. It, therefore, concluded that Husband's pension income was not available for purposes of satisfying his spousal support obligation. *Id.* at ¶ 11. It concluded that his pension income could be considered, however, "for the purposes of determining the appropriate amount of spousal support that can be satisfied through other sources of income or assets." *Id.* Because Husband had income from other sources that could be used to satisfy the spousal support award, the Eighth District concluded that the trial court did not abuse its discretion when it denied his motion to terminate spousal support. *Id.* at ¶ 13-14.

{¶18} This case is factually distinguishable from *Kline*. Although the parties' separation agreement provides that each party shall retain his or her property free and clear, Husband's stock in the California company was not part of their agreement. It, therefore, is not subject to the terms of the agreement despite the trial court's finding that it is Husband's separate property.

Since the "free and clear" language does not apply to the stock at issue in this case as it did to the pension at issue in *Kline*, the trial court's order for Husband to pay Wife part of the proceeds of his investment in the California company does not constitute an inequitable form of double dipping. *Id*. at ¶ 7, 11. Husband's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN DISTRIBUTING HUSBAND'S SEPARATE PROPERTY TO WIFE UNDER THE GUISE OF SPOUSAL SUPPORT.

{¶19} Husband argues that, by granting Wife 33% of all the income that he earns from the California company stock, the court, in effect, distributed one-third of the stock to her. He argues that, under Section 3105.18, the trial court was not authorized to distribute his share of the marital estate under the guise of spousal support. In support of his argument, he cites *Heller v. Heller*, 10th Dist. Franklin No. 07AP-871, 2008-Ohio-3296.

{¶20} In *Heller*, John and Susan Heller divorced after 30 years of marriage. One of their marital assets was Husband's 39.5% interest in the corporation where he worked. The trial court determined the present value of Husband's interest in the company, which included a forecast of the company's future earnings. It equalized the marital property division by awarding Wife assets that equaled the value of Husband's stake in the company. Regarding spousal support, it included the distribution of income that Husband expected to receive from the company when it determined his annual income. On appeal, the Tenth District Court of Appeals held that the court's judgment allowed Wife to improperly "double dip" in the future earnings of Husband's company because it included them when it valued the marital assets and when it determined Husband's income for spousal support purposes. *Id*. at ¶ 21. It concluded that "courts may treat a spouse's future business profits either as a marital asset subject to division, or as a stream of income for spousal support purposes, but not both." *Id*. at ¶ 23.

**{¶21}** *Heller* is distinguishable because, in this case, the trial court found that Husband's stock in the California company was his separate property and did not include it as part of its division of marital property. We also conclude that, just because Husband acquired the stock with his share of the marital assets does not mean the court could not consider it when it determined Husband's spousal support obligation. Section 3105.18(C)(1)(a) specifically provides:

> In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment * * * of spousal support * * * the court shall consider * * * [t]he income of the parties, from all sources, including * * * income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code[.]

The trial court, therefore, was allowed to consider Husband's income from his investment in the California company when it determined the amount and designated the "terms of payment" of the spousal support award. R.C. 3105.18(C)(1)(a).

**{¶22}** We do not agree with Husband's argument that awarding Wife 33% of the income or gain in the California stock is "no different than distributing 33 percent of the * * *stock to Wife." Under the terms of the decree, Wife is only entitled to a share of any income or gain made on the stock, not its underlying value. It, therefore, is not the same as if the court had distributed 33% of the stock to Wife. Husband's fourth assignment of error is overruled.

ASSIGNMENT OF ERROR V

THE TRIAL COURT'S SPOUSAL SUPPORT AWARD IS INAPPROPRIATE AND UNREASONABLE.

**{¶23}** Husband argues that the trial court's spousal support award is inappropriate and unreasonable since Wife can maintain the marital standard of living for only $18,000 per month. He notes that, in *Estes v. Estes*, 2d Dist. Miami No. 96-CA-07, 1996 WL 596539 (Oct. 18, 1996), the Second District Court of Appeals wrote that "[i]n our view, the upper limit for sustenance in

the spousal support context is the amount of money necessary, in conjunction with the obligee's own income, to maintain the marital standard of living." *Id*. at *2.

**{¶24}** In *Estes*, the Second District noted that Section 3105.18(A) defines "spousal support" as "any payment * * * made to a * * * former spouse * * * that is both for sustenance and for support of the * * * former spouse." *Id*. at *2, quoting R.C. 3105.18(A). Because the statute does not define "sustenance," the court examined the dictionary definitions, and determined that the most appropriate one was "the act of sustaining or the state of being sustained." *Id*. It reasoned that, if sustenance means to sustain, the upper limit of spousal support that can be awarded in a case is the amount that is needed to allow the recipient spouse to maintain the marital standard of living. *Id*.

**{¶25}** *Estes* has not been followed by the Second District in any subsequent cases. More recently, that court has written that, "[a]lthough R.C. 3105.18 does not require a spousal support award to provide the parties with an equal standard of living, equity requires that a disadvantaged spouse receive sufficient spousal support to bring him or her up to a reasonable standard of living in light of the standard maintained during the marriage." *Howell v. Howell*, 2d Dist. Clark No. 2002 CA 60, 2003-Ohio-4842, ¶ 25. The standard announced in *Howell* is the same standard that this Court has followed. *Saluppo v. Saluppo*, 9th Dist. Summit No. 22680, 2006-Ohio-2694, ¶ 30, quoting *Berthelot v. Berthelot*, 154 Ohio App.3d 101, 2003-Ohio-4519, ¶ 47 (9th Dist.). It suggests that in many cases, an award of spousal support that will allow the recipient to maintain the marital standard of living is closer to the lower limit of spousal support that equity requires.

**{¶26}** Regarding this Court's precedent, we note that, in *Schieve v. Schieve*, 9th Dist. Medina No. 05CA0037-M, 2005-Ohio-5190, a case involving a long-term marriage, this Court

upheld an award of spousal support that was designed to allow Wife to maintain the same standard of living as Husband. *Id.* at ¶ 11-12. In this case, the trial court relied on *Schieve* and Husband has not attempted to distinguish it. In *Meyer v. Meyer*, 9th Dist. Summit Nos. 16433, 16440, 1994 WL 592497 (Oct. 26, 1994), this Court concluded that, given the large discrepancy in the parties' income, it was not an abuse of discretion for the trial court to allow Wife to share in the success of Husband's business, which did not occur until after they separated. *Id.* at *8-9. Upon review of those cases, we conclude that the mere fact that a spousal support award allows a spouse to continue to maintain the same standard of living as the other spouse and allows her to continue to benefit from the paying spouse's success does not mean that the trial court abused its discretion in forming the award.

{¶27} Husband also argues that the facts of this case do not support the amount of spousal support that the trial court awarded. He argues that, even if Wife does not go back to work, she will earn over $300,000 a year by investing her share of the marital assets, and notes that she has no debt or other liabilities. He also argues that, although Wife testified that she has had mental health issues since their separation, she provided no expert testimony or documentary evidence to support her claims. He further argues that she is only 51 years old and does not have any minor children, meaning that she is still young and free enough to seek employment outside the home. According to Husband, the spousal support award is inappropriate and unreasonable because there is no upper limit on the amount of income he might be required to pay and it is not related to Wife's actual financial needs. He contends that an award of $6,000 to $10,000 a month would have been more appropriate.

{¶28} Wife testified that, while the divorce was pending, she was living on a budget of $18,000 a month, but emphasized that she was "just making it." She also testified that, although

she had prepared a report of her anticipated future expenses, the quality of her lodging would be "still not close to the house that I lived in." In its decree, the trial court ordered Husband to pay Wife $13,525 per month in spousal support, assuming that Wife would be able to earn $4,370 per month if she resumed working full time. In total, that would give Wife approximately $18,000 per month. While that does not include any income Wife may be able to earn from investing her share of the marital assets or the proceeds she may receive from Husband's bonuses and investment in his employer, the trial court found that the award would permit her to continue to maintain the same standard of living as Husband.

{¶29} Husband acknowledges that it was a long term marriage and that the parties enjoyed a high standard of living during the marriage. He also acknowledges that he has a higher level of education than Wife and that the parties paid off his student loans during the marriage. It also does not appear to be controverted that, even if Wife resumes working, she will not be able to earn anywhere close to the same level of income as Husband.

{¶30} The trial court noted that the parties had worked as a team throughout their marriage so that they could acquire the marital assets they accumulated and maximize Husband's earning capacity. It found that Wife had worked only sparingly during the marriage, focusing on caring for the family and household. It noted Wife's testimony that the parties had agreed that they wanted their children raised by them and not by childcare providers. In addition, Husband agreed that the parties had a traditional marriage, that he was the breadwinner while Wife stayed home and took care of the home and children. It also found that Husband had reached the peak of his career and earning capacity.

**{¶31}** The court in this case characterized the parties as a "team." It described Wife's involvement as a corporate wife who did everything possible to further his career.[2] It appears to have been persuaded by the fact that Wife toiled together with Husband when they planted and nursed the seeds of his career, but that he cut her out once the harvest came in. Upon review of the record, we conclude that, given the length of the parties' marriage, the disparity in their earning potential, and Wife's role in helping Husband advance his career, the trial court did not abuse its discretion when it found that it was equitable for Wife to receive a level of spousal support that will enable her to maintain the same standard of living as Husband. Husband's fifth assignment of error is overruled.

III.

**{¶32}** The trial court did not violate Section 3105.18 or abuse its discretion when it calculated the spousal support award. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

---

[2] The trial court's entry contained detail concerning Wife's involvement with furthering Husband's career which included several relocations, involving herself in the community, holding parties for employees, buying baby gifts for employees, and entertaining customers and corporate officers during his tenure at Schneller.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

MOORE, P. J.
BELFANCE, J.
CONCUR.

APPEARANCES:

CHARLES E. GRISI and CHARLES M. BUDDE, Attorneys at Law, for Appellant.

RANDAL A. LOWRY and KENNETH L. GIBSON, Attorneys at Law, for Appellee.