[Cite as *Palazzo v. Palazzo*, 2016-Ohio-3041.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

CYNTHIA PALAZZO

      Appellee

      v.

JOHN W. PALAZZO

      Appellant

C.A. Nos.     27932
             27935

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     2012-04-1249

DECISION AND JOURNAL ENTRY

Dated: May 18, 2016

SCHAFER, Judge.

{¶1} Cynthia Palazzo and John Palazzo both appeal from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, granting a divorce decree. On appeal, Mrs. Palazzo challenges the trial court's finding that Mr. Palazzo did not engage in financial misconduct, its failure to order security or interest on Mr. Palazzo's property division payments, and its spousal support award in her favor. Meanwhile, Mr. Palazzo challenges the trial court's order that he pay one-half the cost of transcription for this matter. We affirm the trial court's judgment as it relates to Mr. Palazzo's alleged financial misconduct, the decision to not order security on Mr. Palazzo's property division payments, and the order that Mr. Palazzo pay one-half of the transcription costs. However, we reverse the trial court's judgment as it relates to spousal support and the decision to not order that Mr. Palazzo pay interest on his property division payments. Accordingly, we affirm in part and reverse in part the trial court's

judgment and remand this matter for further proceedings regarding interest on Mr. Palazzo's property division payments and the proper amount of spousal support.

I.

{¶2} This is a divorce action between Mr. and Mrs. Palazzo after 28 years of marriage and this is the second time that this matter has come before this Court. *See Palazzo v. Palazzo*, 9th Dist. Summit No. 27332, 2015-Ohio-1254 ("*Palazzo I*"). Mr. Palazzo is the sole owner of Frontline International, Inc. ("Frontline"), which has been the source of income for the parties since its inception in 2000. Frontline's headquarters in Cuyahoga Falls is on property that is leased from JZM Properties, L.L.C. ("JZM"). Mrs. Palazzo was the sole owner of JZM until December 2013 when title was transferred to Mr. Palazzo. Between January 2011 and April 2011, Mr. Palazzo withdrew $38,453.24 from JZM as a member draw. At the time of the withdrawals, the parties were separated but neither party had initiated the divorce proceedings. Mr. Palazzo indicated that he used the JZM draws to pay for personal expenses, including real estate taxes as well as tuition and other expenses for the parties' three children. However, Mr. Palazzo was unable to describe the exact manner that the money was disposed and he said that did not deposit it into his checking account because he was "tired of somebody snooping around all [his] personal business."

{¶3} The parties filed for divorce in April 2012 and the matter proceeded to a trial that lasted for several days. The parties disputed whether Mr. Palazzo engaged in financial misconduct and the appropriate amount of spousal support. The trial court eventually entered a divorce decree in March 2014. The court found that Mr. Palazzo did not engage in financial misconduct and ordered him to pay Mrs. Palazzo $372,251.50 for her share of the property division, with an initial sum of $6,355.30 to be paid in 30 days and the remaining balance to be

paid at the rate of $3,000 per month with no interest accruing. The trial court stated that it was not awarding interest because the property division was not a judgment. The trial court further ordered Mr. Palazzo to pay spousal support in the monthly amount of $1,500 until either party's death or Mrs. Palazzo's remarriage. The trial court reserved authority to modify the amount of spousal support under certain express circumstances.

{¶4} Mrs. Palazzo appealed from the original divorce decree. We sustained Mrs. Palazzo's second assignment of error, which asserted that the trial court "erred in failing to consider the funds that [Mr. Palazzo] withdrew from JZM in issuing its decree." *Palazzo I* at ¶ 21. In doing so, we ordered that "[u]pon remand, the trial court must examine the evidence and determine how to treat [the JZM draws] and whether a finding of financial misconduct is warranted and, if so, whether a distributive award should be made." *Id*. at ¶ 26. As a result of our resolution of this issue as well as Mrs. Palazzo's first assignment, we determined that the trial court's spousal support award and failure to include interest or security on the property division award were premature. And, because we affirmed the trial court's judgment in part and reversed it in part, we ordered that "[c]osts [be] taxed equally to both parties."

{¶5} On remand, the parties filed additional briefing on the issues identified in *Palazzo I*, but the trial court received no additional evidence. Mrs. Palazzo filed a motion requesting that Mr. Palazzo pay one-half the costs of preparing the transcript of the trial for the appellate proceedings. The trial court granted Mrs. Palazzo's motion and ordered that Mr. Palazzo pay $3,610 toward the transcription costs.

{¶6} The trial court subsequently issued another judgment addressing the issues outlined in *Palazzo I*. The trial court determined that Mrs. Palazzo did not carry her burden of establishing financial misconduct on Mr. Palazzo's part. In making this determination, the trial

court found that "the evidence did not show that [Mr. Palazzo] stole the funds; that he intentionally lost the funds; that [Mr. Palazzo] used the funds differently from other funds; or that he profited from the funds."

{¶7} The trial court increased Mrs. Palazzo's property division award by $20,092.62 for the JZM member draws and stated that "[t]his additional amount is added to the prior award and shall be paid in the same manner, *i.e.*, at the rate of $3,000 per month until paid in full." Although it increased the amount of Mrs. Palazzo's property division award, the trial court declined to order that Mr. Palazzo pay interest on the award and it declined to place an encumbrance on the subject property (Frontline and JZM). The trial court's reasoning for this decision was as follows:

> As testified to by [Mr. Palazzo] and not disputed by [Mrs. Palazzo], Frontline operates in a competitive business environment. There are two scenarios which the Court must consider in making a decision that is equitable. Frontline has value primarily as an ongoing business. JZM has very little. Frontline may go bankrupt, or may be bought out by a competitor. In either case, [Mr. Palazzo] will not receive his share of the division of property. * * * If [Mrs. Palazzo] has security she will receive her share while [Mr. Palazzo] would receive little or nothing. If the business is sold, again, [Mr. Palazzo] may not receive the funds equal to his share. [Mrs. Palazzo] wants to shift all the risk of loss to [Mr. Palazzo] while receiving full payment. Awarding a security interest to [Mrs. Palazzo] for her share where [Mr. Palazzo] has no security for his share is not equitable.

The trial court's judgment further provided that all other aspects of the original decree remained in full force and effect, including the order that Mr. Palazzo pay $1,500 per month in spousal support.

{¶8} Both parties have appealed from the trial court's judgment and this Court subsequently consolidated the appeals. Mrs. Palazzo has raised three assignments of error for our review while Mr. Palazzo has raised one.

II.

**Mrs. Palazzo's First Assignment of Error**

**The trial court erred in failing to comply with this Court's remand concerning the member draws taken from JZM by Mr. Palazzo.**

{¶9} The language of the first assignment of error indicates that Ms. Palazzo's argument focuses on the trial court's purported failure to follow our mandate on remand. But, the body of her brief focuses on the argument that the trial court erred by failing to find that Mr. Palazzo committed financial misconduct when he withdrew $38,453.24 from JZM as a member draw. Mrs. Palazzo further argues in her brief that due to this asserted error, the trial court erred by failing to award her half of the amount of the JZM draws. We limit our discussion to those argument raised in the body of the appellate brief. And, after considering these arguments, we must disagree with Mrs. Palazzo.

{¶10} R.C. 3105.171(E)(4) states that "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." Financial misconduct under the provisions of this statute "necessarily implicates wrongdoing such as one spouse's interference with the other's property rights or the offending spouse's profiting from the misconduct." *Tustin v. Tustin*, 9th Dist. Summit No. 27164, 2015-Ohio-3454, ¶ 43, citing *Bucalo v. Bucalo*, 9th Dist. Medina No. 05CA0011-M, 2005-Ohio-6319, ¶ 22; *see also Jacobs v. Jacobs*, 4th Dist. Scioto No. 02CA2846, 2003-Ohio-3466, ¶ 23 ("There must be a clear showing that the offending spouse either profited from the alleged misconduct or intentionally defeated the other spouse's distribution of assets."). "To find financial misconduct a court must look to the reasons behind the questioned activity or the results of the activity and determine whether the

wrongdoer profited from the activity or intentionally dissipated, destroyed, concealed, or fraudulently disposed of the other spouse's assets." *Bucalo* at ¶ 30. The party alleging the existence of financial misconduct bears the burden of proof. *Tustin* at ¶ 43.

{¶11} When reviewing whether a trial court erred by finding that a party did not engage in financial misconduct, we apply the manifest weight of the evidence standard. *Id.* We "apply the same manifest weight standard in both criminal and civil cases." *Wheatley v. Howard Hanna Real Estate Servs.*, 9th Dist. Lorain No. 13CA010505, 2015-Ohio-2196, ¶ 11, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. Accordingly, we act "as an additional trier of fact and review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *Tustin* at ¶ 43. In carrying out this review, we must make "[e]very reasonable presumption in favor of the judgment and interpret ambiguous elements of the record in a way that is most favorable to sustaining the trial court's [finding] and judgment." (Internal quotations and citations omitted.) *Wheatley* at ¶ 11. In line with this standard of review, we must also remain mindful that "the weight to be given the evidence and the credibility of witnesses are primarily for the trier of facts." (Internal quotations and citations omitted.) *Donovan v. Donovan*, 9th Dist. Lorain No. 11CA010072, 2012-Ohio-3521, ¶ 18.

{¶12} The record does not indicate that the trial court's finding regarding financial misconduct was against the manifest weight of the evidence. At trial, Mr. Palazzo testified that the member draws were used to pay real estate taxes, the tuition bills of the parties' children, and other personal expenses, including the expenses of the children. *See Mantle v. Sterry*, 10th Dist. Franklin No. 02AP-286, 2003-Ohio-6058, ¶ 34 (affirming trial court's determination that husband did not engage in financial misconduct since there was "no allegations that [husband]

personally profited from his actions or engaged in any conduct for the sole purpose of defeating his wife's interest in any property" and the husband's "spending habits did not affect the parties' chosen lifestyle"). Additionally, there was no evidence that Mr. Palazzo used the funds for any luxurious items that were outside the norm for the parties and the record reflects that the JZM draws were made a year before divorce proceedings commenced, which reduces the inference of wrongdoing on Mr. Palazzo's part. *Compare Boggs v. Boggs*, 5th Dist. Delaware No. 07 CAF 02 0014, 2008-Ohio-1411, ¶ 81 (determining that trial court's finding that wife did not engage in financial misconduct was against the manifest weight of the evidence because she entered into a lease for a Cadillac nine days before filing for divorce); *Moore v. Moore*, 175 Ohio App.3d 1, 2008-Ohio-255, ¶ 40 (6th Dist.) (determining that the trial court properly found that husband engaged in financial misconduct when $24,000 was withdrawn from parties' joint account after the initiation of divorce proceedings).

{¶13} Mrs. Palazzo identifies the portions of Mr. Palazzo's testimony that suggests the existence of misconduct on his part. She specifically points out that Mr. Palazzo acknowledged not keeping records of his use of the JZM draws because he wanted to avoid "snooping." However, in light of our deferential standard of review regarding witness credibility and the weight of evidence, we cannot seize upon this contrary evidence to disturb the trial court's determination regarding financial misconduct. *See Babka v. Babka*, 83 Ohio App.3d 428, 436 (9th Dist.1992) (rejecting manifest weight challenge to trial court's financial misconduct finding because the trial court could hear testimony and discount it). Additionally, the lack of proper records is not sufficient reason to overturn a trial court's determination that a party did not engage in financial misconduct. *See Cwik v. Cwik*, 1st Dist. Hamilton No. C-090843, 2011-Ohio-463, ¶ 77-81 (affirming trial court's finding of no financial misconduct even though spouse

withdrew "large sums of marital cash which is unaccounted for"); *Jacobs*, 2003-Ohio-3466, at ¶ 24 ("We agree that appellee did not always provide sufficient documentation concerning the transfer of marital funds and that he was sometimes less than precise in pinpointing the location of those funds. This does not mean, however, that financial misconduct occurred.").

{¶14} Accordingly, we overrule Mrs. Palazzo's first assignment of error.

### Mrs. Palazzo's Second Assignment of Error

**The trial court erred in failing to order any security for or interest on Mr. Palazzo's property division payments.**

{¶15} In her second assignment of error, Mrs. Palazzo contends that the trial court erred when it failed to order either that Mrs. Palazzo obtain a security interest on the property or that Mr. Palazzo pay interest on his property division payments. We disagree with Mrs. Palazzo's argument as it relates to the trial court's decision to not award security on the property division payments but we agree insofar as the argument relates to the trial court's decision to not award interest.

{¶16} R.C. 3105.171(E)(1) provides that "[t]he court *may* require any distributive award to be secured by a lien on the payor's specific marital property or separate property." (Emphasis added.) Additionally, "there is no requirement that a trial court award interest on monetary obligations which arise from property divisions" or require security for a property division award. *Saluppo v. Saluppo*, 9th Dist. Summit No. 22680, 2006-Ohio-2694, ¶ 17; *see also Koegel v. Koegel*, 69 Ohio St.2d 355, 357 (1982). In light of the trial court's broad discretion in deciding whether to place security or interest on a property division award, we review the trial court's decision on this matter for an abuse of discretion. *See Oliver v. Oliver*, 12th Dist. Butler No. CA2011-01-004, 2011-Ohio-6345, ¶ 26; *Saluppo* at ¶ 7. An abuse of discretion is more than an error of judgment; it implies that the trial court's decision was unreasonable, arbitrary, or

unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court may not simply substitute its own judgment for that of the trial court. *Pons v. Ohio Stat Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶17} Here, the trial court extensively outlined the basis for not awarding a security interest in the property division award to Mrs. Palazzo. The trial court's reasoning was essentially that Frontline operates within a competitive business environment that could lead to its bankruptcy or sale. In either scenario, the value of Frontline, and relatedly, JZM, as the lessor of the property used by Frontline, could possibly plummet[1] and Mr. Palazzo would not receive his portion of the property division award. If Mrs. Palazzo's property division award had an encumbrance on it, she would still receive her portion of the property division award, which the trial court found to be an inequitable result in light of the risk borne by Mr. Palazzo. We can discern no abuse of discretion in such a determination and are unable to disturb it on appeal.

{¶18} Although the trial court engaged in a thorough analysis regarding the potential encumbrance of the property, it did not do so when deciding whether to order that Mr. Palazzo pay interest on the property division amount. Rather, in the judgment entry issued before *Palazzo I*, the trial court only stated that interest would not be awarded because the property division award was not a judgment. This reasoning reflects an abuse of discretion. *See Ash v. Ash*, 7th Dist. Columbiana No. 04-CO-18, 2005-Ohio-1443, ¶ 29 (stating that "it was within the court's discretion to award [the receiving party] interest" on the property division amount if the paying party was late in making a payment), citing *Koegel* at syllabus ("Whether to award interest upon obligations arising out of the division of marital property is within the discretion of

---

[1] We note that if Mr. Palazzo is able to sell the business to a competitor for more than its current value, it would inure to his benefit. The trial court's judgment entry does not reflect that it considered this possibility. However, this does not constitute reversible error.

the trial court"). We have previously recognized that a trial court abuses its discretion when it fails to order the payment of interest on periodic payments for a property division award if "[t]here is no discussion in the entry * * * that it would be inequitable to require [the paying party] to pay interest on his long-term payments[.]" *Budd v. Munka*, 9th Dist. Summit No. 27051, 2014-Ohio-4185, ¶ 17. Indeed, we have previously reversed a trial court's property division award where "the trial court (1) failed to account for interest on the monthly payments and (2) provided no reason for permitting [the paying party] to make monthly payments which will ultimately cost him less than making a lump sum payment." *Saluppo* at ¶ 17. The same operative facts exist here since the trial court failed to address why Mr. Palazzo should be able to make monthly property division payments that cost him less than a lump sum payment. Indeed, absent the payment of interest, "[s]uch a result clearly provides a windfall for" Mr. Palazzo. *Id.* at ¶ 19. We consequently determine that the trial court abused its discretion by allowing periodic property division payments without addressing whether it would be inequitable to order interest on the payments.

{¶19} In sum, the trial court did not abuse its discretion in determining that Mrs. Palazzo was not entitled to a security interest on the subject property for the property division award. Accordingly, we overrule Mrs. Palazzo's second assignment of error as it relates to the trial court's decision to not award a security interest. However, the trial court did abuse its discretion by failing to order the payment of interest on Mr. Palazzo's property division payments to Mrs. Palazzo without first addressing why an interest award would be inequitable. Accordingly, we sustain Mrs. Palazzo's second assignment of error insofar as it relates to the trial court's failure to order the payment of interest and remand this matter for the trial court to address whether the payment of interest on the property division payments is equitable.

**Mrs. Palazzo's Third Assignment of Error**

**The trial court erred in its award of spousal support by considering as Mrs. Palazzo's income the property division payments to be made by Mr. Palazzo.**

{¶20} In her third assignment of error, Mrs. Palazzo argues that the trial court erred by including Mr. Palazzo's property division payments to her as income for spousal support purposes. We agree.

{¶21} We review a trial court's decision regarding spousal support for an abuse of discretion. *Wuscher v. Wuscher*, 9th Dist. Summit No. 27697, 2015-Ohio-5377, ¶ 15. When applying this review to a trial court's spousal support award, we must be mindful of the Ohio Supreme Court's guidance "that the court of common pleas has wide latitude in determining the appropriateness of as well as the amount of [spousal support]." *Bolinger v. Bolinger*, 49 Ohio St.3d 120, 122 (1990). Although a trial court has discretion when fashioning its spousal support award, it does not have discretion to disregard the statutory mandates that control spousal support. *See Cherry v. Cherry*, 66 Ohio St.2d 348, 355 (1981) ("[A] trial court's discretion, though broad, is not unlimited."); *Heller v. Heller*, 195 Ohio App.3d 541, 2011-Ohio-5364, ¶ 21 (10th Dist.) ("Although R.C. 3105.18 provides the trial court with broad discretion in establishing spousal support, 'this statutory scheme does not allow a court to fine, penalize or reward either party at the time of the divorce decree.'"), quoting *Simoni v. Simoni*, 102 Ohio App.3d 628, 637 (8th Dist.1995).

{¶22} R.C. 3105.18 governs the award of spousal support, *Manos v. Manos*, 9th Dist. Summit No. 27335, 2015-Ohio-2932, ¶ 11, and courts must consider the factors contained in R.C. 3105.18(C)(1)(a)-(n) when calculating spousal support, *Organ v. Organ*, 9th Dist. Summit No. 26904, 2014-Ohio-3474, ¶ 6. R.C. 3105.18(A) defines spousal support as "any payment or payments to be made to a spouse or former spouse * * * that is both for sustenance and for

support of the spouse or former spouse." It further explains that the term "does not include any payment to a spouse or former spouse * * * that is made as part of a division or distribution of property * * * under [R.C.] 3105.171[.]" *Id.* R.C. 3105.18(B) additionally instructs courts to only issue spousal support awards "after the court determines the division or disbursement of property under [R.C.] 3105.171[.]" *See also* R.C. 3105.171(C)(3) ("The court shall provide for an equitable division of marital property * * * prior to making any award of spousal support to either spouse under [R.C. 3105.18] and without regard to any spousal support so awarded."). By the plain terms of these provisions, a spousal support award is separate from a property division award and any property division payments cannot be considered as income for spousal support purposes, which are defined by statute as "support" and "sustenance." R.C. 3105.18(A). The Second District Court of Appeals has described these purposes as follows:

> Although an award of spousal support must be for the sustenance of the obligee spouse to come within the statutory definition of "spousal support," sustenance is not a defined term. In our view, "sustenance," in the context of R.C. 3105.18, has some elasticity. The thing being sustained is the obligee spouse's standard of living. Particularly in a marriage of long duration, it is appropriate and reasonable to sustain the obligee spouse's standard of living as close to the standard of living enjoyed during the marriage as is consistent with the obligor spouse's ability to pay.

*Seagraves v. Seagraves*, 2d Dist. Montgomery No. 15588, 1996 WL 185332, *6 (Apr. 19, 1996); *see also Moore v. Moore*, 9th Dist. Summit No. 12338, 1986 WL 3262, *2 (Mar. 12, 1986) ("[S]ustenance alimony is intended to meet the [obligee spouse]'s financial needs[.]").

{¶23} Although property division payments cannot be considered as income for spousal support purposes, R.C. 3105.18(C)(1)(i) instructs courts to consider "[t]he relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties[.]" This subsection authorizes trial courts to consider a spouse's property division payments when calculating that spouse's spousal support obligation. *E.g. Stover v. Stover*, 9th

Dist. Summit No. 15842, 1993 WL 107852, *4 (Apr. 14, 1993). Nevertheless, trial courts must abstain from considering property division payments as income inuring to the obligee spouse for the purpose of paying the obligee's reasonable living expenses. *See Hutta v. Hutta*, 5th Dist. Delaware No. 10CAF040031, 2011-Ohio-3041, ¶ 24 (affirming trial court's consideration of property division payments where the "court seemed to be saying that spousal support and investment income should be sufficient to cover the appellant's basic living expenses and, if she wants to continue to live a luxurious lifestyle, she has the choice to dip into her property division proceeds").

{¶24} Here, the trial court improperly included Mr. Palazzo's property division payments as income to Mrs. Palazzo for spousal support purposes. The court attached an exhibit to its judgment entry showing the calculations it used when arriving at its spousal support award. The exhibit lists Mrs. Palazzo's income as $26,000 for her salary plus $18,000 for spousal support receipts and $36,000 in "non-taxable maintenance," which represents the amount of the monthly property division payments. After deducting $8,269 for tax obligations, the trial court listed Mrs. Palazzo's "after tax cash for living expenses" as $71,731.

{¶25} These calculations reflect that the trial court included Mr. Palazzo's property division payments to her as Mrs. Palazzo's income for the purpose of paying her living expenses. In other words, the trial court's calculations manifest an expectation that Mrs. Palazzo rely on the money she received as property division payments to sustain her standard of living, i.e., satisfy the purposes of spousal support. *See* R.C. 3105.18(A); *see also Miller v. Miller*, 5th Dist. Coshocton No. 06 CA 3, 2006-Ohio-7019, ¶ 20 ("By expressly stating that a trial court must divide the marital property 'without regard' to the award of spousal support, the General Assembly clearly intended to stop a trial court from combining the two awards.") (Internal

quotation and citation omitted.). Meanwhile, the calculations show that no such expectation existed for Mr. Palazzo. The exhibit shows that Mr. Palazzo had $73,878 in "after tax cash" to sustain his standard of living. This figure does not reflect any of the money from his share of the divided property. Such inequity is unreasonable, contrary to the provisions of R.C. 3105.18, and constitutes an abuse of discretion. *See Fulmer v. Fulmer*, 11th Dist. Trumbull No. 98-T-0146, 2000 WL 635445, *3 (May 5, 2000) ("Ohio appellate courts have consistently refused to require the party receiving spousal support to invest his or her portion of the marital property division in order to reduce the need for spousal support"). *Compare Hutta* at ¶ 25 ("We cannot conclude the trial court considered [obligee]'s installment payments of marital property to be income to her for *purposes of meeting her reasonable monthly expenses*.") (Emphasis added.).

{¶26} Accordingly, we sustain Mrs. Palazzo's third assignment of error, reverse the spousal support award, and remand this matter for the trial court to address the issue of spousal support without considering Mr. Palazzo's property division payments to Mrs. Palazzo as income for meeting her reasonable living expenses.

### Mr. Palazzo's Assignment of Error

**The trial court committed prejudicial error when it granted Mrs. Palazzo's post-decree motion to tax transcript costs.**

{¶27} In his assignment of error, Mr. Palazzo argues that the trial court erred by ordering him to pay one-half the costs for the preparation of the transcript used in *Palazzo I* and these appellate proceedings. He argues that the trial court lacked the authority to issue such an order because App.R. 24 gives sole authority for such an order to the Court of Appeals. Although we agree that the trial court lacked authority to issue any order regarding costs for transcripts used in appellate proceedings, we determine that Mr. Palazzo has failed to establish the existence of prejudicial error.

{¶28} App.R. 24(A)(4) provides that "the party liable for costs is * * * if the judgment appealed is affirmed or reversed in part * * *, as ordered by the court." We have previously recognized that "a court of appeals has exclusive [authority] under App.R. 24 to assess costs on appeal[.]" *Crest Mgmt., Inc. v. McGrath*, 9th Dist. Summit No. 16579, 1994 WL 316556, * 3 (July 6, 1994). As a result, a trial court erred when it orders that a party pay the costs of appeal after the matter is remanded. *See Baldwin v. Vogelson*, 6th Dist. Wood No. WD-03-049 2003-Ohio-7255, ¶ 5 (reversing trial court's order that the appellant pay the appellee's attorney fees as costs because "[d]etermination of what are the costs of the appeal under App.R. 24(B) is solely within the [authority] of the appellate court"). Consequently, under App.R. 24, the trial court was without authority to rule on Mrs. Palazzo's motion to equally tax the cost of preparing the transcript for appeal as that authority rested solely with this Court.

{¶29} Nevertheless, this determination does not end our review. App.R. 24(B) states that "'costs' means an expense incurred in preparation of the record including the transcript of proceedings[.]" Based on this definition, "on appeal, the expenses of preparing a transcript is included in 'costs.'" *Munroe v. Munroe*, 119 Ohio App.3d 530, 545 (8th Dist.1997). In *Palazzo I*, we ordered that "[c]osts [be] taxed equally to both parties," which, under the plain terms of App.R. 24(B), necessarily included the costs of preparing the transcript for that matter. As a result, our mandate in *Palazzo I* required that Mr. Palazzo pay half of all costs, including the cost of preparing the transcript. Thus, our cost order in *Palazzo I* became law of the case and the trial court could not vary it. *See Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984) ("[T]he decision of a reviewing court in a case remains the law of the case on the legal questions involved for all subsequent proceedings in the case both at trial and the reviewing levels."). Since the trial court's ruling on Mrs. Palazzo's motion was consistent with the mandate of *Palazzo I*, Mr.

Palazzo cannot demonstrate prejudicial error. *See Collier v. Dorcik*, 9th Dist. Medina No. 03CA0103-M, 2004-Ohio-4062, ¶ 7 ("It is fundamental that, to demonstrate reversible error on appeal, Appellants must not only demonstrate error by the trial court by they must also demonstrate that they were materially prejudiced by that error."), citing App.R. 12(B).

{¶30} Accordingly, we overrule Mr. Palazzo's sole assignment of error.

## III.

{¶31} We overrule Mrs. Palazzo's first assignment of error and Mr. Palazzo's sole assignment of error. However, we sustain Mrs. Palazzo's second assignment of error in part and her third assignment of error. Consequently, we affirm in part and reverse in part the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. We remand this matter to the trial court for it to consider whether it is equitable to award interest on Mr. Palazzo's property division payments and to reconsider the issue of spousal support as instructed above.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, P. J.
BALDWIN, J.
CONCUR.

(Baldwin, J., of the Fifth District Court of Appeals, sitting by assignment.)

APPEARANCES:

LESLIE S. GRASKE and HOWARD J. WALTON, Attorneys at Law, for Appellant.

RICHARD A. RABB and KAITLYN D. ARTHURS, Attorneys at Law, for Appellee.