OPINION.
{¶ 1} After Vineyard Community Church terminated their employment, plaintiffs-appellants Sandi Horine and Greg Williams sued the church for retaliation in violation of R.C. 4112.02, and for wrongful discharge in violation of public policy.
 {¶ 2} The church filed a motion to dismiss the complaint, pursuant to Civ.R. 12(B)(1), alleging the court's lack of jurisdiction over the subject matter, and Civ.R. 12(B)(6), alleging the plaintiffs' failure to state a claim upon which relief could be granted. The church attached to its motion an affidavit by David Workman, its senior pastor. In response, Horine and Williams filed their own affidavits. The trial court dismissed the action upon its finding that it lacked jurisdiction to determine the controversy.
 {¶ 3} In a single assignment of error, Horine and Williams now argue that the trial court erred by granting the motion to dismiss. They contend that, procedurally, the court erred by converting the motion to one for summary judgment and by failing to apply the proper legal analysis for a summary-judgment motion.
 Dismissal for Lack of Subject-Matter Jurisdiction {¶ 4} When a motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside the pleading, the trial court must treat the motion as one for summary judgment and dispose of the motion as provided in Civ.R. 56.[1] But a trial court does not err by failing to convert the motion to one for summary judgment when determining its subject-matter jurisdiction pursuant to Civ.R. 12(B)(1).[2] Nor is the court confined to the allegations of the complaint in doing so.[3]
 {¶ 5} In considering the motion to dismiss for lack of subject-matter jurisdiction, the court may hold an evidentiary hearing and resolve any disputed facts related to the court's inquiry.[4] The court may dismiss a complaint for lack of subject-matter jurisdiction based upon "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts, plus [its] resolution of disputed facts."[5]
 {¶ 6} "If the trial court's disposition of the [Civ.R.12(B)(1)] motion was based on `the complaint supplemented by undisputed facts evidenced in the record,' appellate review is limited to a determination of whether the facts are indeed undisputed and whether the trial court correctly applied the law. If the disposition of the motion was also based on the trial court's resolution of disputed factual issues, our standard of review is that applicable to any other determination founded upon a trial court's resolution of disputed factual issues, i.e., whether the trial court had before it competent and credible evidence to support its determination."[6]
 {¶ 7} In this case, the trial court did not convert the motion to dismiss into one for summary judgment. Such a conversion was not required because the court disposed of the motion pursuant to Civ.12(B)(1).[7] Because the court's disposition of the motion involved its resolution of disputed factual issues, we must determine whether competent, credible evidence supported the dismissal.[8]
 Ministerial Exception {¶ 8} In their complaint, Horine and Williams alleged that the church had retaliated against them in violation of R.C. 4112.02(I) because they had opposed what they believed to be an unlawful discriminatory practice. Horine and Williams further alleged that their terminations jeopardized Ohio's public policy encouraging people to consult with attorneys regarding matters affecting their rights and obligations.
 {¶ 9} The trial court determined that Horine and Williams were ministers, so that the "ministerial exception" to state employment laws prevented it from reviewing the church's internal disciplinary matters.[9] "The constitutional ministerial exception is rooted in the First Amendment's guarantee of religious freedom and generally bars civil courts from reviewing decisions of religious organizations relating to the employment of their ministers."[10] "The exception precludes any inquiry whatsoever into the reasons behind a church's ministerial employment decision."[11]
 {¶ 10} This court has held that "[w]hile we agree that matters regarding `who should preach from the pulpit' are fundamentally and unquestionably beyond the jurisdiction of secular courts [citations omitted], the cases demonstrate that all matters of the propriety of internal church discipline * * * whether taken against a clergyman or a church member, are beyond the jurisdiction of secular courts."[12]
 Horine and Williams Were Ministers {¶ 11} In resolving the question whether Horine and Williams were ministers of the church, the trial court made certain factual determinations. With respect to Horine, the court found that she had been employed by the church as its staff development director, which required her to oversee the spiritual well-being of the staff. Horine had been responsible for administering a "spiritual assessment" to applicants for employment with the church. The assessment examined an applicant's faith journey and spiritual development. Horine had been charged with evaluating an applicant's answers to the assessment to determine whether the candidate should advance within the hiring process. She had implemented the church's hiring policy, which mandated staff members' agreement with the church's statement of faith and guiding principles.
 {¶ 12} With respect to Williams, the court found that he had been employed by the church as an associate pastor, charged with "provid[ing] leadership, vision, values and direction; ensur[ing] spiritual health and growth of attendees, maintain[ing] Biblical Integrity among staff and leaders, supervis[ing] staff and direct[ing] the ministry areas toward the fulfillment of the Vision/Mission." Williams had been a member of the church's senior leadership team, a body that developed the church's spiritual direction.
 {¶ 13} Moreover, the court found that the church had issued ministry licenses to both Horine and Williams. The ministry licenses stated that each of them was certified "as a minister of the Gospel of Jesus Christ. * * * [She/He] has completed all the studies and has met all the requirements of this body for recognition of such office; further, by rite of license[,] [she/]he is duly licensed to perform all ministerial functions without limit as accorded by the laws of the land and in compliance with the ordinances of God's holy church as set forth in God's Holy Word." Both Horine and Williams were certified by the state of Ohio as ministers authorized to solemnize marriages.
 {¶ 14} For federal income-tax purposes, Horine and Williams applied for the Internal Revenue Service's housing exemption, which was available only to "a minister of the gospel." The exemption entitled a minister of the gospel to exclude from gross income a church-designated allowance paid to the minister as compensation to the extent used by the minister for actual expenses in owning or renting a home.
 {¶ 15} We agree with Horine and Williams that the church's "internal characterization" of them as "ministers" was not dispositive of their status for purposes of application of the ministerial exception. On the other hand, we find somewhat disingenuous their argument that they were not ministers of the church.
 {¶ 16} From a reading of the trial court's decision, it is clear that the trial court did not rely solely on the church's labeling of Horine and Williams. Instead, in making its determination that Horine and Williams were ministers, the trial court considered their actual duties within the church, as well as their licensing as ministers with both the church and the state, and their utilization of ministerial tax exemptions.
 {¶ 17} Our review of the record convinces us that the trial court's determination that Horine and Williams were both ministers was supported by competent, credible evidence. Accordingly, the trial court properly determined that the ministerial exception stripped it of jurisdiction to consider their claims that the church had violated state employment laws.
 {¶ 18} Consequently, we overrule the assignment of error and affirm the trial court's judgment. Judgment affirmed.
[1] Civ.R. 12(B).
[2] Southgate Development Corp. v. Columbia Gas TransmissionCorp. (1976), 48 Ohio St.2d 211,358 N.E.2d 526, paragraph one of the syllabus.
[3] Id.
[4] Wilkerson v. Howell Contrs., Inc., 163 Ohio App.3d 38,2005-Ohio-4418, 836 N.E.2d 29, ¶ 9.
[5] Jenkins v. Eberhart (1991), 71 Ohio App.3d 351, 355,594 N.E.2d 29, citing Williamson v. Tucker(C.A.5, 1981), 645 F.2d 404, 413.
[6] Wilkerson, supra, at ¶ 10, citing Rijo v. Rijo (Feb. 1, 1995), 1st Dist. No. C-930704.
[7] See Southgate, supra.
[8] See Wilkerson, supra, at ¶ 10.
[9] See Serbian E. Orthodox Diocese v. Milivojevich (1976),426 U.S. 696, 724-725, 96 S.Ct. 2372.
[10] Hollins v. Methodist Healthcare, Inc. (W.D.Tenn.2005),379 F. Supp.2d 907, 911, citing Lewis v. Seventh Day Adventists Lake RegionConference (C.A.6, 1992), 978 F.2d 940, 942-943.
[11] EEOC v. Roman Catholic Diocese of Raleigh, N.C. (C.A.4, 2000),213 F.3d 795, 801.
[12] Howard v. Covenant Apostolic Church, Inc. (1997),124 Ohio App.3d 24, 705 N.E.2d 385 (citations omitted).