[Cite as *Falah v. Falah*, 2017-Ohio-1087.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| JAMILA FALAH | C.A. No.     15CA0039-M |
|     Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| GHAZI FALAH | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
|     Appellant | CASE No.    14 DR 0051 |

DECISION AND JOURNAL ENTRY

Dated: March 27, 2017

---

CARR, Presiding Judge.

{¶1} Defendant-Appellant, Ghazi Falah ("Husband"), appeals from the judgment of the Medina County Court of Common Pleas, Domestic Relations Division. This Court affirms in part, reverses in part, and remands for further proceedings.

I.

{¶2} Husband and Plaintiff-Appellee, Jamila Falah ("Wife") married in Israel in August 1981 and had four children during the course of their marriage, three of whom are now adults and one of whom is deceased. Husband is a tenured university professor who taught in multiple countries over the years while Wife remained alongside him and raised their four children. The family ultimately settled in Wadsworth in 2001, but both Husband and Wife continued to travel internationally to visit family and friends.

{¶3} In August 2013, one or both of the parties decided to divorce, and they both prepared their Wadsworth home for sale. Both parties remained at the marital residence until

October 2013, when Wife went on a trip to Israel. Husband then followed Wife to Israel and, in December 2013, filed for a divorce in the Sharia Court. Wife initially refused service, but ultimately secured an attorney in Israel, participated in the proceedings, and received a deferred dowry. While the Israeli proceedings were still pending, however, Wife also returned to the United States and filed a complaint for divorce in Medina. Following her return, Wife continued to reside in the marital residence until it sold in July 2014.

{¶4} Husband responded to Wife's complaint in Medina by filing a motion to dismiss for lack of jurisdiction. He argued both that Wife had abandoned her Ohio domicile when she left for Israel and the court had to cede jurisdiction to Israel, where he had filed for divorce. Before the court could hold a hearing on Husband's motion, the Sharia Court issued a decision, approving a divorce for the parties under Israeli law. Husband then filed a supplement to his motion to dismiss, notifying the court of the divorce in Israel. In August 2014, while this matter was still pending, Husband remarried in Israel.

{¶5} A magistrate held a hearing on a Husband's motion to dismiss in December 2014 and later denied it. The trial court adopted the magistrate's decision, and scheduled the matter for a final divorce hearing. The final hearing took place before the trial judge in March 2015. In its final judgment entry, the court purportedly gave comity to the parties' Israeli divorce decision, but it also granted a decree of divorce and set forth orders for the division of their assets and the allocation of their debt. Additionally, it ordered Husband to pay Wife permanent spousal support in the amount of $2,750 per month.

{¶6} Husband now appeals from the trial court's judgment and raises five assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT DUE TO LACK OF JURISDICTION.

{¶7} In his first assignment of error, Husband argues that the trial court erred by not dismissing Wife's complaint. Specifically, he argues that the court lacked jurisdiction to hear this matter because Wife was not a resident of Ohio for at least six months before she filed her divorce complaint. We do not agree.

{¶8} Generally, "[a] motion to dismiss for lack of subject matter jurisdiction raises questions of law that we review de novo." *Jackson v. Ohio Dept. of Edn.*, 9th Dist. Summit No. 27686, 2016-Ohio-2818, ¶ 9. In determining subject matter jurisdiction, however, a court "is not confined to the allegations of the complaint, and [] may consider material pertinent to such inquiry without converting the motion into one for summary judgment." (Alterations sic.) (Internal quotations and citations omitted.) *Romano Constr., L.L.C. v. B.G.C., L.L.C.*, 9th Dist. Summit No. 26469, 2013-Ohio-681, ¶ 6. "'If the disposition of the motion was [] based on the trial court's resolution of disputed factual issues, our standard of review is that applicable to any other determination founded upon a trial court's resolution of disputed factual issues, i.e., whether the trial court had before it competent and credible evidence to support its determination.'" *Smith v. White*, 2d Dist. Montgomery No. 25622, 2014-Ohio-130, ¶ 25, quoting *Horine v. Vineyard Community Church*, 1st Dist. Hamilton No. C-060097, 2006-Ohio-6620, ¶ 6.

{¶9} "R.C. 3105.03 creates a strict test of residency * * *." *Barth v. Barth*, 113 Ohio St.3d 27, 2007-Ohio-973, paragraph one of the syllabus. "Under R.C. 3105.03, a trial court has subject matter jurisdiction to hear a divorce action if the plaintiff has been an Ohio resident for at

least six months immediately before the complaint was filed, no matter where the marriage took place or the cause of the divorce occurred." *Nain v. Nain*, 9th Dist. Lorain No. 93CA005669, 1994 WL 411690, *1 (Aug. 3, 1994). The word "'resident' [as used in R.C. 3105.03] * * * 'means one who possesses a domiciliary residence, a residence accompanied by an intention to make the state of Ohio a permanent home.'" (Emphasis omitted.) *Barth* at ¶ 12, quoting *Coleman v. Coleman*, 32 Ohio St.2d 155, 162 (1972). "A person can have but one domicile at any given time." *Redmon v. Redmon*, 9th Dist. Summit No. 9844, 1981 WL 3863, *2 (Feb. 18, 1981).

> "When a person's legal residence is once fixed, * * * it requires both fact and intention to change it. In other words, to effect a change of domicile from one locality, country, or state to another, there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place, with the intention of making the last acquired residence a permanent home."

*Id.*, quoting *In re Hutson's Estate*, 165 Ohio St. 115, 119 (1956). "Thus, a person can have multiple residences, but can have only one domicile." *Schill v. Cincinnati Ins. Co.*, 141 Ohio St.3d 382, 2014-Ohio-4527, ¶ 25.

{¶10} There is no dispute that Wife filed her complaint for divorce against Husband on February 3, 2014. According to Husband, the court lacked jurisdiction over Wife's complaint because she left Ohio on October 1, 2013, with the intention to relocate. He argues that Wife's "actions establish an actual physical relocation and an intention to establish a residence outside of Ohio." Because Wife intentionally abandoned her Ohio domicile four months before filing for divorce, Husband argues, she could not satisfy the jurisdictional requirement for residency set forth in R.C. 3105.03. Thus, he argues that the court erred when it denied his motion to dismiss.

{¶11} A magistrate conducted a hearing on Husband's motion to dismiss Wife's complaint, and both Wife and Husband testified at the hearing. There was testimony that the

parties moved multiple times throughout their marriage until 2001, when they settled in Wadsworth and Husband secured permanent employment as a university professor. In August 2013, either one or both of the parties decided to divorce and prepared their marital home for sale. Both parties testified that they placed their home on the market and sold a sizeable amount of their furnishings in August or September 2013.

{¶12} Wife testified that she left Ohio on October 1, 2013, and traveled to Toronto because she and Husband were not getting along. Wife remained in Toronto for a single day before flying to Israel. She denied that she either had a residence in Toronto or had any intention to move there. She testified that she took, at most, two suitcases with her when she left Ohio. Meanwhile, she placed possessions from the marital home in storage in Akron. Wife testified that it was common for her to travel internationally on occasion to visit family and friends, but that she always intended to return to Ohio and maintain her residence here. She testified that her youngest son was currently attending college in Akron and that she intended to stay close to him. Wife indicated that, when she left Ohio, she maintained the bank account that she had in Wadsworth and left behind her personal belongings as well as her car.

{¶13} According to Wife, Husband repeatedly told her that she would have to move to Toronto after their divorce because she could obtain welfare there and he did not intend to pay her any money. She testified that, when she returned from her trip to Israel on January 10, 2014, she had to stay in Toronto for several days because Husband had her car, refused to come get her, and indicated that she was not welcome at their home. After a few days, Wife rented a car and returned to the marital residence, where she resided until it sold in July 2014. Wife testified that she then moved to Akron to live with her son. She stated that, had someone inquired about

her permanent address six months before she filed for divorce, she would have given them her address in Wadsworth.

{¶14} Husband testified that Wife obtained her college degree in August 2013 and, before that, repeatedly said she wanted to move to Toronto after her graduation. Husband stated that Wife was "very clear" about her intention to move and that she informed their real estate agent of her intention when the parties placed their home on the market. He testified that their family owned a condominium in Toronto and that one of their sons currently resided there. According to Husband, the parties sold the majority of their home furnishings in August or September 2013 and their insurance company even went so far as to contact him in December 2013 because the company believed their home in Wadsworth to be vacant. Husband acknowledged, however, that Wife continued to stay at the marital residence following her return from Israel. He further acknowledged that, while he resided in Wadsworth from 2001 until the time of the divorce, he too occasionally traveled to Israel.

{¶15} Following the hearing on Husband's motion, the magistrate issued an order denying the motion and determining that Wife was a resident of Ohio for at least six months before she filed her complaint. The trial court then adopted the magistrate's decision and issued a journal entry, denying Husband's motion. We would note that Husband never filed objections to the magistrate's decision on his motion to dismiss and that, ordinarily, his failure to do so would result in his having forfeited his right to challenge the court's adoption of the magistrate's decision. *See* Civ.R. 53(D)(3)(b)(iv). Because subject matter jurisdiction cannot be waived and may be raised at any time, however, we nonetheless address Husband's argument on its merits. *See Greater Temple Christian Church v. Higgins*, 9th Dist. Summit No. 23022, 2006-Ohio-3284, ¶ 16, quoting *Freeland v. Pfeiffer*, 87 Ohio App.3d 55, 58 (9th Dist.1993).

{¶16}  The trial court determined that Husband had failed to set forth sufficient evidence that, before filing for divorce, Wife had abandoned her Ohio domicile with no intention to return to it.  The court noted that Wife denied having any intention to permanently leave Ohio and that she maintained connections here, such as placing possessions in storage in Akron and continuing to reside at the marital residence upon her return from Israel.  The court determined that both parties regularly traveled internationally throughout the course of the marriage.  It concluded that an extended visit to a foreign country was an insufficient basis upon which to conclude that Wife was no longer domiciled in Ohio.

{¶17}  Having reviewed the record, we must conclude that the trial court's decision is based on competent, credible evidence.  *See Smith*, 2014-Ohio-130, at ¶ 25, quoting *Horine*, 2006-Ohio-6620, at ¶ 6.  Although Wife left Ohio at the beginning of October 2013 and did not return for three months, there was evidence that she placed possessions in storage in Akron, maintained her local bank account in Wadsworth, left her car in Wadsworth, and brought, at most, two suitcases with her.  There also was evidence that it was not uncommon for both parties to travel internationally during the course of the marriage.  When Wife returned from Israel, she continued to reside at the marital residence until it sold some seven months later.  Wife and Husband lived at that same address for over 12 years before Wife filed her complaint for divorce.  Moreover, Wife specifically testified that she had no intention of permanently leaving Ohio, in part because she wanted to stay close to her youngest son.  To the extent that her testimony conflicted with Husband's regarding her intention to move, the trial court was in the best position to listen to their respective testimony and assess their credibility.  *See Young v. Young*, 9th Dist. Wayne No. 16AP0016, 2017-Ohio-238, ¶ 21, quoting *Bey v. Bey*, 3d Dist. Mercer No. 10-08-12, 2009-Ohio-300, ¶ 15.  Husband failed to show that Wife actually established another domicile or

that she intended to permanently abandon her domicile in Ohio. *See Redmon*, 1981 WL 3863, at *2, quoting *In re Hutson's Estate*, 165 Ohio St. at 119. Consequently, the trial court did not err by denying his motion to dismiss. Husband's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

> THE TRIAL COURT ERRED IN EXERCISING ITS JURISDICTION OVER THE PARTIES WHERE THE COURT RECOGNIZED THE ISRAELI COURT'S JURISDICTION, DEFERRED DIVISION OF ISRAELI REAL PROPERTY TO THE ISRAELI COURT AND GRANTED COMITY TO THE ISRAELI DIVORCE DECREE.

{¶18} In his second assignment of error, Husband argues that the court erred when it exercised its jurisdiction over the parties, despite granting comity to the divorce they obtained in Israel during the pendency of these proceedings. He argues that, once the court decided to give effect to the Sharia Court's decision, it should have dismissed the matter instead of addressing issues of spousal support, asset distribution, and debt division. We do not agree that the court erred by exercising its jurisdiction over the parties.

{¶19} "Comity * * * refers to an Ohio court's recogni[tion of] a foreign decree[] [as] a matter of courtesy rather than of right." *State ex rel. Lee v. Trumbull County Probate Court*, 83 Ohio St.3d 369, 374 (1998).

> States are empowered, if they freely elect to do so, to recognize the validity of certain judicial decrees of foreign governments when they are found by the state of the forum to be valid under the law of the foreign state and when such recognition is harmonious with the public policy of the forum state. Thus, in the interest of comity, an Ohio court will recognize a foreign decree as a matter of courtesy.

(Internal citations omitted.) *Mustafa v. Elfadli*, 5th Dist. Delaware No. 12 CAF 08 0058, 2013-Ohio-1644, ¶ 18. "'This principle is frequently applied in divorce cases; a decree of divorce granted in one country by a court having jurisdiction to do so will be given full force and effect in another country by comity, not only as a decree determining status, but also with respect to an

award of alimony * * *.'"  *Kalia v. Kalia*, 151 Ohio App.3d 145, 2002-Ohio-7160, ¶ 37 (11th Dist.), quoting *Litvaitis v. Litvaitis*, 162 Conn. 540, 544-545 (1972).

**{¶20}** As noted, Husband filed for divorce in Israel before these proceedings began and, during the course of these proceedings, the Sharia Court issued a decision, purporting to grant the parties a divorce.  The decision from the Sharia Court did not divide any of the parties' property or personal belongings, but found that they were entitled to a divorce due to the irreconcilable "discord and dispute" that had arisen between them.  The decision also ordered Husband to pay Wife her "deferred dowry which is registered in the marriage contract mainly hundred thousand old Shakel indexed to the cost of living as from the date of conduct the contract on July 1, 1981 until the complete performance."  There is no dispute that Wife ultimately accepted the payment of her dowry from Husband.  Additionally, there is no dispute that the dowry Husband was ordered to pay, when converted to dollars, amounted to $37,250.

**{¶21}** Although the trial court looked to the Sharia Court's establishment of the term of the parties' marriage, it also entered a judgment in favor of Wife, finding that she was entitled to a divorce on the grounds of incompatibility.  Additionally, it found Wife's dowry award to be a form of spousal support and afforded Husband a $37,250 credit toward spousal support based on his payment of the dowry.  The court determined, however, that the lump sum payment did not prohibit a further award of spousal support.  Consequently, it went on to apply the factors set forth in R.C. 3105.18(C)(1) to determine whether an award of spousal support would be reasonable and appropriate under the circumstances.

**{¶22}** The court ultimately awarded Wife $2,750 per month in spousal support from the date of the termination of the marriage with an offset[1] for the $37,250 that Husband had already paid. It also divided the parties' remaining assets and liabilities, including their vehicles, Husband's interest in an academic journal, Husband's retirement accounts, the parties' remaining personal belongings, their outstanding loans, their medical bills, and their attorney fees. The only potentially marital asset that the court did not divide was three parcels of real estate in Israel. The court decided to relinquish jurisdiction over those properties to Israel because it was concerned about the enforceability of its orders in Israel and, during trial, "the parties agreed that they would invoke the jurisdiction of an Israeli civil family court to determine their rights and interests in that real estate."

**{¶23}** Husband asserts that the trial court erred by exercising its jurisdiction over the parties because, once it gave comity to the Sharia Court's decision, it should have declined to address any additional issues. The record reflects, however, that the trial court did not give "full force and effect" to the Sharia Court's decision. *See Kalia*, 2002-Ohio-7160, at ¶ 37, quoting *Litvaitis*, 162 Conn. at 544-545. While the court spoke in terms of "comity," it merely used the Sharia Court's decision as additional evidence that the parties had decided to terminate their marriage and that Husband had already paid Wife a certain sum of money as a result of that decision (i.e., her dowry). The court independently (1) granted Wife a divorce on the grounds of incompatibility, (2) divided the parties' assets and debts, and (3) fashioned a spousal support order. Thus, the court entered judgment independently of the Sharia Court's decision.[2]

---

[1] The court created an offset by: (1) not assessing Husband any arrearages for spousal support due between August 5, 2014, and April 5, 2015; and (2) reducing his payments after the latter date by $500 per month for a period of 31 months.

[2] We note that, had the court actually given comity to the Sharia Court's decision, its decision would have been in error. At the final divorce hearing, both parties testified that the Sharia

Moreover, as previously explained, it had jurisdiction over Wife's complaint. The parties resided in Medina County for more than 12 years before Wife filed her complaint, and, as a resident of the State of Ohio for more than six month's duration, she was entitled to invoke the jurisdiction of the court in Ohio. *See* R.C. 3105.03. Because the court properly exercised its jurisdiction over the parties, Husband's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN FAILING TO AWARD APPELLANT CREDIT FOR SPOUSAL SUPPORT PAID UNDER THE TEMPORARY ORDER OF THE COURT.

{¶24} In his third assignment of error, Husband argues that the trial court erred when it did not award him credit for the spousal support payments he made under the court's temporary orders. Upon review, we remand this matter to the trial court for further consideration.

{¶25} "Generally, we review trial court's determinations in domestic relations cases for an abuse of discretion." *Manos v. Manos*, 9th Dist. Summit No. 27335, 2015-Ohio-2932, ¶ 26. An abuse of discretion implies that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

---

Court is separate from the civil courts in Israel. Wife described the Sharia Court as offering a religious divorce akin to an annulment rather than a civil divorce. Meanwhile, Husband testified that, following an order from the Sharia Court, it would be necessary for him to obtain a certificate from the Israel Ministry of Interior, which was a civil court. No such certificate was ever entered into evidence. The record only contains a copy of the Sharia Court's decision, which is in Arabic, and a purported translation of that decision. It is entirely unclear from the record what legal effect, if any, the Sharia Court decision has. Accordingly, absent additional information, it would have been error for the trial court to give full force and effect to the decision under the principles of comity. *See Mustafa*, 2013-Ohio-1644, at ¶ 18 (full faith and credit may be given when foreign decree "found by the state of the forum to be valid under the law of the foreign state and when such recognition is harmonious with the public policy of the forum state"). Because the court entered judgment independently of the Sharia Court, however, its error would have been harmless. *See* Civ.R. 61.

{¶26} Wife moved for temporary spousal support on February 3, 2014, the same date that she filed her complaint for divorce. Due to a number of setbacks and scheduling delays, however, the magistrate did not issue a temporary support order until November 6, 2014. On that date, the magistrate ordered Husband to pay Wife temporary support in the amount of $3,500 per month plus processing, retroactive to February 3, 2014. The magistrate afforded Husband a credit on his arrearages due to his having paid Wife's dowry and the continuing expenses for the marital residence. There was evidence that, between December 2014 and April 2015 (when the court issued its final judgment entry), Wife received at least three temporary support payments from Husband.[3]

{¶27} In issuing its final judgment entry, the trial court sua sponte reconsidered the magistrate's temporary support order. *See Davis v. Davis*, 9th Dist. Wayne No. 10CA0018, 2011-Ohio-2322, ¶ 9, quoting *Kelm v. Kelm*, 93 Ohio App.3d 686, 689 (10th Dist.1984) ("'[A] temporary [spousal] support order[] is provisional in nature, subject to modification at any time,' prior to final judgment."). The court ultimately assigned Husband all of the marital debt that the parties had incurred in the United States, so, "[i]n consideration of [that] decision," it vacated the magistrate's temporary support order and the credit that the magistrate had afforded Husband. The court determined that Wife was entitled to spousal support, effective from the date of its final judgment entry. The court applied a $37,250 credit towards Husband's permanent spousal support obligation, representing the sum he paid on Wife's dowry.

{¶28} Although the court awarded Husband a spousal support credit for his payment of Wife's dowry, it does not appear that the court considered whether to award him a credit for the

---

[3] At the March 2, 2015 divorce hearing, Wife testified that she had not yet received her support payment for March. Presumably, she later received an additional payment for March before the court issued its final judgment entry in April.

temporary spousal support that he paid. The court vacated the magistrate's temporary spousal support order, but, at that point in time, Husband had already paid Wife over $10,500 in temporary support. The court neglected to address those payments. In light of the fact that the court vacated the temporary support order, we must conclude that it acted unreasonably in failing to address the temporary support that Husband had already paid. *See Blakemore*, 5 Ohio St.3d at 219. Consequently, we must remand this matter for the court to address the temporary support Husband paid in light of its decision to vacate the order for temporary support. *See generally Syverson v. Syverson*, 9th Dist. Lorain No. 09CA009527, 2009-Ohio-6701, ¶ 24. Husband's third assignment of error is sustained on that basis.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED AND IT WAS AN ABUSE OF DISCRETION FOR THE COURT TO ORDER EACH PARTY TO PAY THEIR OWN MEDICAL BILLS.

**{¶29}** In his fourth assignment of error, Husband argues that the trial court abused its discretion when it ordered each of the parties to pay their own medical bills. Specifically, he argues that it was inequitable for the court to order him to pay 87% of the parties' medical debt when that debt was incurred before the de facto termination date of the parties' marriage. We disagree.

**{¶30}** A domestic relations court enjoys broad discretion in making "an equitable distribution of the parties' assets and liabilities." *Prohaska v. Prohaska*, 9th Dist. Medina No. 2946-M, 2000 WL 530359, *8 (May 3, 2000). Consequently, we apply an abuse of discretion standard of review when presented with a challenge to the court's division of marital debt. *Polacheck v. Polacheck*, 9th Dist. Summit Nos. 26551, 26552, 2013-Ohio-5788, ¶ 7. An abuse of discretion implies that the trial court was unreasonable, arbitrary, or unconscionable in its

ruling. *Blakemore*, 5 Ohio St.3d at 219. When applying the abuse of discretion standard, a reviewing court may not simply substitute its own judgment for that of the trial court. *Pons v. Ohio Stat Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶31} "[T]his Court * * * has typically held that marital debt is subject to allocation as part of the property distribution and that debt allocation is guided by the same equitable factors contained in R.C. 3105.171." *Polacheck* at ¶ 18. Those factors are:

(1) The duration of the marriage;

(2) The assets and liabilities of the spouses;

(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;

(4) The liquidity of the property to be distributed;

(5) The economic desirability of retaining intact an asset or an interest in an asset;

(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.171(F)(1)-(10).

{¶32} In making an equitable distribution of the parties' assets and liabilities, the trial court here determined that the parties had been married for over 32 years and their children were either grown or deceased. The court determined that the parties had already sold their marital residence and had evenly divided the $5,751.99 in proceeds from that sale. The court found that

Husband was a tenured university professor with a base salary of $96,918 who had "enjoyed significant international professional opportunities" during the course of the marriage while Wife raised the parties' children and never pursued employment outside the home. With regard to the parties' outstanding debts, the court found that: (1) they had $27,884.78 in outstanding marital debt from the United States; (2) Husband had claimed $45,551 in outstanding debt from Israel and Bulgaria; (3) Wife had claimed several additional debts representing loans from family members; (4) Wife had $1,349 in outstanding medical bills; (5) Husband had $9,078 in outstanding medical bills; and (6) both parties owed fees to their attorneys.

{¶33} The trial court ultimately assigned the entire $27,884.78 debt that the parties had incurred in the United States to Husband, but, "[i]n consideration of [that] decision," vacated his temporary spousal support obligation. The court refused to consider Husband's $45,551 debt from Israel and Bulgaria to be marital debt because there was evidence that he had incurred that debt by borrowing money (1) to pay Wife's dowry, (2) to obtain a car for himself in Israel, and (3) to "set up what he hopes will be his new life [in Israel]." The court noted that Husband had remarried shortly after obtaining his divorce in Israel and there was no evidence that the debt he incurred there was marital. Consequently, it found Husband solely responsible for those debts. The court likewise found Wife solely responsible for the additional debts she claimed to owe to family members. Additionally, it found both parties responsible for their own attorney fees and medical bills. With respect to Husband's medical bills, there was evidence that he incurred them when he had a major heart attack and ensuing complications in Israel, beginning in June 2014. The court wrote: "As none of the [medical] expenses appear to have been incurred while the parties were together and were, in fact, incurred in different countries on separate continents, each party shall be responsible for his or her own unreimbursed medical expenses * * *."

{¶34} Husband submits that all of the parties' medical bills were marital debt, so it was inequitable for the court to order him to pay $9,078 in medical bills while Wife only had to pay $1,349. He argues that it is irrelevant where the bills were incurred because the parties incurred them before the de facto termination date of the marriage. He argues that the court abused its discretion by not treating the medical bills as a single debt to be evenly split between the parties; particularly when the court had allocated "significant other debt" to him.

{¶35} Upon review, Husband has not shown that the trial court abused its discretion by ordering both parties to pay their own medical bills. The evidence was that the parties had a long-term marriage, Husband had a yearly salary of almost $100,000, and Wife had no employment history or prospects. *See* R.C. 3105.171(F)(1)-(2). The court, in its sound discretion, could have determined that Husband was far more capable of satisfying the debts at issue. Notably, the parties did not have a significant amount of assets remaining such that Wife could rely upon them to offset any outstanding debts. *See* R.C. 3105.171(F)(2), (4). Even so, the court did not require Husband to pay all of the parties' debts. It ordered Wife to pay her own medical bills, her own attorney fees, and the additional amounts that she claimed were loans from family members. The fact that the trial court referred to the parties having incurred their medical bills in separate countries is insufficient to demonstrate that it failed to equitably divide their debt in accordance with the factors set forth in R.C. 3105.171. Under the circumstances, Husband has not shown that the court's decision to order each party to pay their own medical bills was unreasonable, arbitrary, or unconscionable. *See Blakemore*, 5 Ohio St.3d at 219. Consequently, his fourth assignment of error is overruled.

**ASSIGNMENT OF ERROR V**

THE TRIAL COURT ERRED IN GRANTING FINAL SPOUSAL SUPPORT OF $2,750.00 PER MONTH IN LIGHT OF THE SIGNIFICANT DISPARITY IN THE DEBTS AND EXPENSES OF THE PARTIES.

**{¶36}** In his fifth assignment of error, Husband argues that the trial court abused its discretion when it awarded Wife spousal support in the amount of $2,750 per month. We do not agree.

**{¶37}** "In divorce * * * proceedings, * * * the court of common pleas may award reasonable spousal support to either party." R.C. 3105.18(B). Absent a challenge to a particular factual finding of the trial court, this Court "'reviews a spousal support award under an abuse of discretion standard.'" *Sayoc v. Sayoc*, 9th Dist. Summit No. 27624, 2016-Ohio-1199, ¶ 6, quoting *Hirt v. Hirt*, 9th Dist. Medina No. 03CA0110-M, 2004-Ohio-4318, ¶ 8. An abuse of discretion implies that a trial court was unreasonable, arbitrary or unconscionable in its judgment. *Blakemore* at 219. When applying the abuse of discretion standard, a reviewing court may not simply substitute its own judgment for that of the trial court. *Pons*, 66 Ohio St.3d at 621.

**{¶38}** "'In determining whether spousal support is appropriate and reasonable,' the court shall consider the factors listed in [R.C.] 3105.18(C)(1)[(a)-(n)]." *Organ v. Organ*, 9th Dist. Summit No. 26904, 2014-Ohio-3474, ¶ 6, quoting R.C. 3105.18(C)(1). Those factors are as follows:

(a) The income of the parties, from all sources * * *;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party * * *;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1)(a)-(n). "Need is not a basis for an award of spousal support; rather, the court must consider the factors set forth in R.C. 3105.18(C)(1) and determine within its sound discretion whether spousal support is appropriate." *Sigman v. Sigman*, 9th Dist. Wayne No. 11CA0012, 2012-Ohio-5433, ¶ 12.

{¶39} Husband argues that the court abused its discretion in its spousal support determination because it did not fully consider the parties' "relative assets and liabilities" under R.C. 3105.18(C)(1)(i). He notes that the court allocated the vast majority of the parties' debt to him and failed to take into account the fact that he also would have a car and housing payment while Wife would not. Husband avers that the court limited its analysis under R.C. 3105.18(C)(1)(i) to a discussion of the parties' assets, rather than their liabilities. Given the

disparity in the allocation of the parties' debt, Husband argues, it was unreasonable for the court to order spousal support in the amount of $2,750 per month.

{¶40} Husband is correct that, in discussing R.C. 3105.18(C)(1)(i), the trial court only referred to the parties' assets and not to their liabilities. The record reflects, however, that the court specifically considered the parties' "sizeable debts" when discussing their standard of living. *See* R.C. 3105.18(C)(1)(g). Husband has not shown that, simply because the court did not discuss the parties' liabilities specifically within the context of R.C. 3105.18(C)(1)(i), it failed to consider those liabilities when deciding whether spousal support would be appropriate and reasonable under these circumstances. *See Organ*, 2014-Ohio-3474, at ¶ 6, quoting R.C. 3105.18(C)(1).

{¶41} In determining whether to award spousal support, the trial court conducted an exhaustive analysis of the factors set forth in R.C. 3105.18(C)(1). It found that the parties had a long-term marriage, both had recently experienced health issues, and Husband was 62 years of age while Wife was 53 years of age. *See* R.C. 3105.18(C)(1)(c), (e). The court found that Husband had a Ph.D. and was a tenured university professor with a base salary of $96,918 while Wife had only recently obtained an undergraduate degree in art and had never worked outside the home. *See* R.C. 3105.18(C)(1)(a), (h). The court noted that Wife had maintained the household and raised the parties' children while Husband accepted teaching positions in multiple countries throughout the course of the marriage. *See* R.C. 3105.18(C)(1)(j), (m). It found that, until recently, Wife never had the opportunity to pursue an education or her own career, due to her marital responsibilities. *See* R.C. 3105.18(C)(1)(m). The court evenly split Husband's significant retirement assets such that Wife would receive one half of the marital portion of those benefits when Husband retired. *See* R.C. 3105.18(C)(1)(d). The court noted that the parties had

already split the proceeds from their marital home and that, while they owned real property in Israel, they had a sizeable amount of debt. *See* R.C. 3105.18(C)(1)(i). The court considered, as an additional factor, the fact that Husband had already paid Wife $37,250 in conjunction with the divorce the parties purportedly obtained in Israel. *See* R.C. 3105.18(C)(1)(n). In fashioning its spousal support order, the court specifically afforded Husband a credit for the $37,250 that he had already paid.

{¶42} In light of the foregoing findings, Husband has not shown that the court's spousal support determination was unreasonable, arbitrary, or unconscionable. *See Blakemore*, 5 Ohio St.3d at 219. Although Wife did not have a car payment at the time of the divorce hearing, the car that the court awarded her was over 12 years old, had been involved in an accident, and, according to Wife, had a value of $750. Moreover, while Wife did not have a house payment at the time of the divorce hearing, she lived with her youngest son and testified that she had used her entire dowry to contribute to their purchase of a foreclosed home that still needed many repairs before it was habitable. Thus, even if Wife did not have a car or house payment at the time of the divorce, one could reasonably conclude that she would incur expenses related to those items in the near future.

{¶43} The record reflects that the parties were married for over 32 years. During that time, Wife sacrificed an education and career to support Husband in his educational and professional pursuits. Given their ages, career paths, and the disparities in their incomes and earning abilities, the trial court reasonably could have determined that Wife was entitled to spousal support, despite having allocated a larger portion of the debt to Husband. Husband's argument that the court abused its discretion in awarding Wife spousal support in the amount of $2,750 per month lacks merit. His fifth assignment of error is overruled.

III.

{¶44} Husband's third assignment of error is sustained. His remaining assignments of error are overruled. The judgment of the Medina County Court of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and the cause is remanded for further proceedings.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

JAMES R. RANFTL, Attorney at Law, for Appellant.

JAMILA FALAH, pro se, Appellee.